UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THERESA COSPER | * | CIVIL ACTION NO.: |
| | * | |
| VERSUS | * | SECTION: " " |
| | * | |
| ELMWOOD VETERINARY SERVICES, LLC | * | MAGISTRATE ( ) |
| d/b/a BANFIELD THE PET HOSPITAL | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiff, Theresa Cosper ("Plaintiff" or "Cosper"), through undersigned counsel, and files this complaint to obtain full and complete relief and to redress the unlawful employment practices suffered by her as described herein.

### I. PRELIMINARY STATEMENT

1.  This action for employment discrimination seeks declaratory, injunctive and equitable relief, back pay, reinstatement (or in lieu thereof, front pay), compensatory damages, punitive damages, attorney's fees, prejudgment interest, and costs for discrimination, harassment, and hostile work environment based on race and retaliation, against Elmwood Veterinary Services, Inc., d/b/a Banfield the Pet Hospital, in its treatment of Theresa Cosper including

-1-

terminating her employment.

## II. JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e et. seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the actions arise under the laws of the United States.

3. The Plaintiff has received a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f).

4. Declaratory, injunctive, and equitable relief is sought pursuant to 42 U.S.C. 2000e-5(g).

## III. VENUE

5. This action properly lies in the Eastern District of Louisiana because Plaintiff was terminated from her employment with Defendant when she was employed in the Eastern District of Louisiana.

## IV. PARTIES

6. Plaintiff Theresa Cosper, (hereafter referred to as "Plaintiff" or "Cosper") is an African American female, a United States citizen and a resident of the state of Louisiana.

7. Elmwood Veterinary Services, Inc., d/b/a Banfield the Pet Hospital (hereafter referred to as "Banfield") is a Limited Liability Company qualified to do business in Louisiana.

## V. FACTS

8. Ms. Cosper began her employment with Banfield in April of 2010 as a Pet Nurse until her illegal termination on or about June 26, 2010.

9. Plaintiff is an African-American woman.

10. Kara Eilts, D.V.M. is the owner and Chief Veterinarian of Banfield.

11. Other Veterinarians include Katie Bannerman ("Dr. Bannerman"), Jennifer Phelps ("Dr. Phelps"), Jennifer Reeb ("Dr. Reeb"), Kenneth Allen ("Dr. Allen") and Nicole Palermo ("Dr. Palermo"). All of the Veterinarians are Caucasian.

12. Vanessa Baker ("Ms. Baker"), white, is the Office Manager and HR Labor Relations.

13. Lauren Hernandez ("Ms. Hernandez"), white, is the Director of Pet Nursing and Plaintiff was one of three or four pet nurses.

14. On or about June 12, 2010, several white employees including Jennifer Pia, Dr. Reeb, and Ms. Hernandez insisted that Plaintiff look at a YouTube video about "stupid names that black people name their children."

15. Being uncomfortable and offended, Plaintiff said she did not want to watch the video.

16. Jennifer Pia exclaimed "stop being a cry baby."

17. Plaintiff stated she was offended and was not going to watch the video.

18. Shortly thereafter, on or about June 14, 2010, Vanesa Leeman ("Ms. Leeman") formerly Vanessa Baker, gave plaintiff a written confirmation of a verbal discussion accusing her of gossiping about the staff. Ironically, on May 14, 2010, a meeting had been held concerning other employees, as well as, veterinarians gossiping about Plaintiff.

19. Plaintiff alleges that the accusation is completely untrue and retaliatory, because of her refusal to participate in looking at the video she considered to be racist.

20. In any event it was determined that Plaintiff was correct in the way she performed her duties and that the other technicians were, in fact, engaging in unprofessional conduct by gossiping about Plaintiff to each other, as well as, with other employees.

21. Dr. Bannerman stated that the way that Plaintiff was performing her job duties was correct, actually she performed up to the industry standard, and that, while it was not routine procedure, at Banfield Plaintiff would be permitted to continue to operate as she had been operating.

22. Among the issues addressed, it is important that Plaintiff's complaint also focused on an incident occurring on or about June 12, 2010 where Plaintiff refused to sit down with other staff members to watch a video about "stupid names that black people name their children."

23. Shortly thereafter, she was told there were too many people at the hospital and that she could leave and go home.

24. Plaintiff asserts that being sent home that day was direct retaliation for refusing to subject herself to racist videos and comments and stated that she felt she was being subjected to blatant racial discrimination/harassment.

25. The next day, June 14, 2010, Plaintiff was also repeatedly asked questions about the different styles of hair black people use, particularly a style called "the Christmas tree light style."

26. When Plaintiff expressed her dislike of that particular topic, many people looked at each other smiled, and said "that isn't racist, is it?"

27. Further, Plaintiff was subjected to on-going racial harassment by her co-workers. Specifically, Plaintiff was asked by Jennifer Pia "why do all Black people smell?"

28. Plaintiff asserts that she sent a letter to Dr. Eilts on June 25, 2010. Plaintiff further asserts that this letter was a complaint concerning race discrimination as it included that she was being treated in contradiction of Banfield's anti-harassment policy as stated in the Banfield

Code of Conduct Business Ethics Guide.

29. Plaintiff asserts that this racial harassment and race discrimination had created a hostile work environment and that Plaintiff was extremely troubled and concerned about blatant race discrimination.

30. For example, she still had no x-ray badge after almost two months of employment at Banfield, although other new employees had received theirs.

31. These were the examples of racism/hostile environment that Plaintiff provided in writing to Dr. Eilts on June 25, 2010.

32. The very next day on Saturday, June 26, 2010, Plaintiff was pulled into a room with Dr. Eilts and Ms. Hernandez.

33. At that time, Dr. Eilts said she felt Plaintiff had personality conflicts with the employees and although her technical skills were wonderful, because of her personality, she was terminated.

34. Most important, Plaintiff alleges that she was terminated because of her complaints about racial discrimination and racial harassment.

35. Plaintiff alleges that any allegation by defendant that her performance or attitude was in any way improper is pretext for prohibited race discrimination and/or retaliation.

36. On June 30, 2010, Cosper filed a Charge of Discrimination with the E.E.O.C. alleging race discrimination and retaliation.

37. Dr. Eilts referred to Plaintiff as a "bitch."

38. Dr. Eilts and other members of the Banfield staff have admitted to saying racial things about the African American race.

39. Further, Jeanne Koper and Dr. Eilts have discussed being members of the Ku Klux Klan and whether Dr. Eilts could borrow a "spare hood."

40. Cosper was terminated in retaliation for complaining to Dr. Eilts on June 25, 2010 about race discrimination.

41. Cosper was also terminated because of race discrimination.

42. The harassment suffered by Cosper was based on her race.

43. The harassment suffered by Cosper was severe or pervasive, or both.

44. The harassment suffered by Cosper affected a term, condition, or privilege of her employment.

45. Banfield knew or should have known of the harassment and failed to take remedial action.

46. The acts of Banfield were practiced with malice and/or reckless disregard to Plaintiff's federally protected rights.

47. As a direct result of the above acts of Banfield, Cosper has suffered pain and suffering, emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation.

## VI. CAUSES OF ACTION

48. By the above acts Banfield has violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by terminating Plaintiff and subjecting Plaintiff to harassment based on her race and by retaliating against Plaintiff.

## VII. PRAYER FOR RELIEF

49. **WHEREFORE**, Plaintiff prays that this Court:

   a. Declare that the acts and practices of the Company complained of herein are in violation of United States law;

   b. Enjoin and permanently restrain the Company from engaging in such unlawful practices;

   c. Award Plaintiff all earnings she did not receive because of the actions of the Company, including but not limited to back pay, pre-judgment interest, bonuses, pension, and any other lost benefits;

   d. Reinstate Plaintiff to the position she would have occupied but for the Company's treatment, or in lieu thereof, award Plaintiff front pay.

   e. Award Plaintiff compensatory damages for pain and suffering, emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation;

   f. Award Plaintiff punitive damages;

   g. Award Plaintiffs costs, expert witness fees, and attorney's fees;

   h. Grant Plaintiff any such relief as this Court may deem just and proper.

## VIII. JURY DEMAND

53. Plaintiff demands trial by jury of all issues in this action.

Respectfully Submitted,

JAMES L. ARRUEBARRENA (#22235)
James L. Arruebarrena, LLC
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 525-2520
Facsimile (504) 581-7083

And

RACHEL MARTIN-DECKELMANN (#32195)
James L. Arruebarrena, LLC
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 212-4166
Facsimile (504) 581-7083

**ATTORNEYS FOR PLAINTIFF, THERESA COSPER**

PLEASE SERVE:

Elmwood Veterinary Services, LLC
Through its agent for service of process:

**KARA ELFERT, D.V.M.**
**33045 BAYOU PAQUET RD.**
**SLIDELL, LA 70460**